# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YUSUF WASHINGTON, | : | No. 3:25cv533 |
| | : | |
| **Plaintiff** | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| C.O. BLOMMEL, <u>et</u> <u>al.</u>, | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Yusef Washington ("Washington") commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, when he was housed at the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"). (Doc. 1).  Named as defendants are Correctional Officer Blommel, Librarian Gomonda,[1] Librarian Valinsky, Unit Manager Adamcik, Correctional Officer Warren, Correctional Officer Hickok, Hearing Examiner Wiederhold, Lieutenant Kraynak, Lieutenant Miotto, Sergeant Rossochacy, Sergeant Troutman, and Unit Manger Wegrzynowicz.

---

[1] Washington spells this defendant's name as both "Gomonda" and "Gamonda."  (<u>See</u> Doc. 1).  In their filings, defendants spell the name as "Gomonda."  (<u>See</u> Docs. 20, 25).  The court will adopt defendants' spelling as correct.

Presently before the court is defendants' motion (Doc. 20) to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion will be granted in part and denied in part.

## I.    **Factual Background**

### A.    Denial of Access to the Courts

Washington first alleges that defendants Blommel, Valinsky, Gomonda, and Adamcik improperly denied him access to the law library at his scheduled times when he was on a cell restriction, and that they made him choose between spending time in the yard or the law library.  (Doc. 1 ¶ 28).  The facts in support of this claim are as follows.

On August 8, 2023, Washington alleges that he was found guilty on an inmate misconduct, which was issued by defendant Blommel.  (Id. ¶ 14).  As result of the finding of guilt, Washington alleges that he was placed on cell restriction from August 8, 2023 to August 22, 2024.  (Id.).  He contends that the conditions of a cell restriction are as follows: "[t]otal confinement to general population cell, dorm area or cubicle, except for meals, showers, one (1) formal religious service per week, commissary, *law library* and (1) one specified daily exercise period.  Specified exercise period is defined as **First Available Recreation**."  (Id. ¶ 15).

2

Washington asserts that he had an upcoming court deadline and was scheduled for the following times in the law library while on cell restriction—August 12, 2023 at 1250 hours; August 14, 2023 at 1250 hours; August 15, 2023 at 1250 hours; August 17, 2023 at 1250 hours; August 19, 2023 at 1250 hours; August 21, 2023 at 1250 hours; August 22, 2023 at 1250 hours.  (Id. ¶ 16). Although he was allegedly scheduled for these law library sessions, Washington alleges that he was denied access to the law library.  (Id. ¶ 17).

On August 12, 2023, at approximately 1300 hours, Washington alleges that he summoned defendant Blommel to his cell door and showed him his DC-15 form and paperwork containing a court deadline.  (Id. ¶ 18).  Washington alleges that defendant Blommel still denied him access to the law library.  (Id.).  At approximately 1308 hours, Washington alleges that a John Doe correctional officer came to his cell door, and Washington showed him his DC-15 form and paperwork containing a court deadline.  (Id. ¶ 19).  The John Doe correctional officer left Washington's cell door, returned at 1320 hours, and informed Washington that "Defendant Blommel has advised him to not allow [Washington] out of his cell for law library."  (Id.).  Washington indicated that he wished to file a grievance, and defendant Blommel allegedly returned to his cell door at 1333

3

hours and "taunted [him] with a grievance advising [him] to proceed with caution." (Id. ¶ 20).

Washington then requested assistance from Sergeant Wagner.  (Id. ¶ 21). Wagner allegedly stated that he spoke with defendants Valinsky and Gomonda (the librarians) and they stated that Washington "never verified anything with them and that [Washington] would not be allowed to attend his law library sessions due to cell restriction."  (Id.).

On August 14, 2023, Washington spoke with defendant Adamcik "verbally and in writing[,]" and informed him that he had a court deadline and was being denied access to the law library due to his cell restriction.  (Id. ¶ 22).  Washington alleges that defendant Adamcik refused to help him and responded that his request was not verified through the librarian, his documents did not contain a deadline and suggested that Washington had to choose between yard or law library.  (Id. ¶ 23).

On August 15, 2023, Washington contacted Superintendent's Assistant Lazusky (a non-defendant) and advised her that he was denied his scheduled law library sessions.  (Id. ¶ 24).

On August 21, 2023, Washington again contacted defendant Adamcik regarding his denial of access to the law library.  (Id. ¶ 25).  In response,

4

defendant Adamcik responded that Washington would be allowed to attend his scheduled law library time; however, Washington alleges that did not occur. (Id. ¶ 26).

On August 29, 2023, Washington filed grievance number 1050669, asserting that he was denied access to the law library. (Id. ¶ 27).

Washington alleges that by denying meaningful access to the law library, defendants Blommel, Valinsky, Gomonda, and Adamcik denied him his right to access the courts and "directly denied him of time that could not be tolled toward the filing of his habea[s] corpus in violation of the First Amendment to the United States Constitution." (Id. ¶ 81).

B.    Denial of Due Process

Washington alleges that he was denied due process in connection with inmate misconduct number D497975. (Id. ¶¶ 36, 48).  The misconduct stems from the following incident.

On October 31, 2023, one of Washington's approved visitors attempted to visit him at SCI-Frackville but was prevented because a K-9 officer searched the visitor. (Id. ¶¶ 29-31).  Though no contraband was found on the visitor, she was not permitted to visit with Washington. (Id. ¶ 31).  The visitor declined a voluntary search of her vehicle when she found out that she would not be permitted to visit

Washington even if the results of the vehicle search were negative.  (Id. ¶¶ 29-33).  The visitor then left the facility.  (Id. ¶ 34).

On November 8, 2023, Washington was escorted to the restricted housing unit ("RHU").  (Id. ¶ 35).  Washington alleges that he was not advised as to why he was being placed in the RHU.  (Id.).  Later that day, Washington alleges that defendant Hickok delivered an incomplete copy of misconduct number D497975 to another inmate, although it was intended for Washington.  (Id. ¶¶ 36-37).  After learning that the misconduct was delivered to the wrong inmate, defendant Hickok served an incomplete copy of misconduct number D497975 on Washington.  (Id. ¶ 38).  Washington alleges that he was charged with violations related to attempting to bring controlled or dangerous substances into SCI-Frackville.  (Id. ¶ 39).  Washington alleges that, by failing to give him the inmate version and witness portions of the discipline forms, defendant Hickok denied Washington the ability to call witnesses and present evidence on his behalf at his misconduct hearing.  (Id. ¶¶ 38, 40, 48).  Following a hearing, Washington was found guilty of possession and conspiracy and was sanctioned with 150 days in disciplinary custody and ultimately transferred to a facility in the Western District of Pennsylvania.  (Id. ¶ 41).  Washington appealed the misconduct but was denied relief on appeal.  (Id. ¶¶ 42-47).

Washington alleges that defendant Hearing Examiner Wiederhold failed to state on the record the reasoning for denying his request to call witnesses or request to review video footage. (Id. ¶ 48). He thus alleges that he was denied due process of law. (Id. ¶¶ 9, 48).

C.    Retaliation

Washington sets forth a retaliation claim against defendant Kraynak.

On December 18, 2023, Washington submitted grievance number 1066072, alleging that three of his outgoing privileged correspondences were opened outside of his presence. (Id. ¶ 49). On December 20, 2023, the grievance was rejected due to Washington's failure to provide the three tampered envelopes. (Id. ¶ 50).

On December 26, 2023, Washington re-submitted grievance number 1066072 and provided copies of the three tampered envelopes. (Id. ¶ 51). He asserts that he only submitted one of the three physical envelopes "due to not trusting the safe keeping of his only evidence." (Id.).

On February 2, 2024, Correctional Officer Walton (a non-defendant), went to Washington's cell and asked him to turn over the envelopes. (Id. ¶ 52). Washington asked Correctional Officer Walton for a confiscation slip to document the envelopes he turned over. (Id.). Correctional Officer Walton then left his cell

to talk to his superiors.  (Id. ¶ 53).  He later returned and advised Washington that a supervisor was going to talk to Washington; however, this never occurred. (Id.).

On February 7, 2024, grievance number 1066072 was denied "alleging that Defendant Kr[a]ynak came to the RHU and instructed RHU staff to ask [Washington] for said evidence (i.e. the remaining two physical envelopes), and [Washington] refused to cooperate." (Id. ¶ 54).  Washington appealed the denial of this grievance, and all appeals were denied.  (Id.).

On February 9, 2024, Washington filed grievance number 1074465, alleging that his non-privileged outgoing correspondence was subject to the same tampering.  (Id. ¶ 55).  On February 20, 2024, the grievance was denied. (Id. ¶ 56).

On February 27, 2024, defendant Kraynak went to Washington's cell door. (Id. ¶ 57).  Washington asked defendant Kraynak "what is going on with his grievance, and why was he alleging that [Washington] refused to cooperate." (Id.).  In response, defendant Kraynak expressed that Washington "was having troubles with his grievance process because of his previous grievances regarding cell restriction 'ticking people off.'"  (Id. ¶ 58).

D.    <u>Cruel and Unusual Punishment</u>

Washington alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when housed in the RHU.  (<u>Id.</u> ¶¶ 59-79).

Washington first alleges that he contracted a bacterial infection in his right index finger when housed in the RHU.  (<u>Id.</u> ¶ 59).  As a result of this bacterial infection, Washington alleges that he suffered physical and emotional pain.  (<u>Id.</u> ¶ 61).

Washington then alleges that he was subjected to cruel and unusual punishment on various dates, including March 21, 2024 and March 23, 2024, when he was denied cold weather clothing by defendants Miotto and Rossochacy.  (<u>Id.</u> ¶¶ 62-64, 67).  Defendants Miotto and Rossochacy allegedly advised Washington that he was not permitted cold weather clothing after March 10, 2024.  (<u>Id.</u> ¶ 65).  As a result, Washington alleges that he was forced to stay in the yard for 90 minutes, suffering in cold and windy conditions.  (<u>Id.</u> ¶ 66).

Washington asserts that he requested protective clothing from defendant Rossochacy, who allegedly pointed out that the protective clothing was hanging on hooks within view, and stated "Washington, look, so close but yet so far. You're not getting one." (<u>Id.</u> ¶ 68).  On March 22, 2024, Washington sent two request slips to defendants Miotto and Rossochacy, requesting that he be

9

provided with protective clothing when attending yard sessions. (Id. ¶¶ 69-74).

Defendant Rossochacy allegedly denied the request and defendant Miotto

"sarcastically stated" that he would consider the request in four weeks. (Id. ¶¶

71, 74).

Washington contacted defendant Wegrzynowicz and requested that the

RHU staff permit protective clothing as permitted by DOC policy, but they failed

to address the issue. (Id. ¶ 75).

Washington filed grievance number 1084267 complaining about being

subjected to cruel and unusual punishment by being forced to stay outside in

cold weather without protective clothing or forfeit his out of cell exercise time. (Id.

¶ 76). Major Reese (a non-defendant) responded to the grievance stating that

the relevant defendants denied that Washington requested protective clothing.

(Id. ¶ 77). Major Reese further advised that he was going to review the cold

weather policy with the relevant defendants. (Id.).

Washington alleges that defendants Miotto, Rossochacy, Wegrzynowicz

knowingly, intentionally, and maliciously violated the Eighth Amendment when

they failed to provide him with protective clothing and forced him to endure

freezing temperatures and rain without benefit of protective clothing. (Id. ¶ 78).

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir.

2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.  **Discussion**

### A.    Claims against Blommel, Valinsky, Gomonda, and Adamcik

#### 1.    **Conspiracy Claim**

Washington sets forth two Section 1983 conspiracy claims: (1) that Blommel denied him access to the law library and conspired with a third-party John Doe correctional officer to not let Washington out of his cell to go to the law library (Doc. 1 ¶ 19); and (2) that third-party Sergeant Wagner called Valinsky

12

and Gomonda to inquire whether they verified Washington's claim of an upcoming court deadline, which they denied and instructed that Washington should not be allowed to attend his law library sessions due to cell restrictions (Doc. 1 ¶¶ 19, 21).  Washington thus alleges that "Blommel, Valinsky, Gom[o]nda and Adamcik conspired to prevent him from attending law library session."  (Doc. 28 ¶ 16) (sic).

"To state a claim for a section 1983 conspiracy, a plaintiff must allege that persons acting under color of state law conspired to deprive him or her of a federally protected right." Adger v. Coupe, 2022 WL 777196, at *4 (3d Cir. Mar. 14, 2022) (citing Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018)); see also Jutrowski, 904 F.3d at 293-94 ("[T]o prevail on a conspiracy claim under § 1983, a plaintiff must [show] that persons acting under color of state law reached an understanding to deprive [the plaintiff] of [their] constitutional rights." (citation and internal quotation marks omitted)).  The plaintiff "must assert facts from which a conspiratorial agreement can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted); see also Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a "meeting of the minds." (citation and internal quotation marks omitted)).  In other words, the

13

plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made," i.e., "plausible grounds to infer an agreement." Great W. Mining & Mineral Co., 615 F.3d at 178 (quoting Twombly, 550 U.S. at 556). A plausible conspiracy "requires that the state actors took concerted action based on an agreement to deprive the plaintiff of [their] constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (citation and internal quotation marks omitted).

Here, Washington fails to allege facts establishing the requisite elements of a conspiracy claim, namely, that the above defendants acted together in any way to deprive him of his rights. Even accepting the allegations in the complaint as true and construing them in the light most favorable to Washington, the complaint lacks sufficient factual allegations showing that Blommel, Valinsky, Gomonda, and Adamcik agreed to violate his constitutional rights. The only facts Washington alleges relating to the alleged conspiracy of these defendants are as follows:

> After speaking to defendant Blommel, C.O. John Doe came to the Plaintiff's cell door at 1308 hours where the Plaintiff showed him DOC policy and his DC-15 form. C.O. John Doe left the Plaintiff's cell door and returned at 1320 hours and informed the Plaintiff that Defendant Blommel has advised him to not allow the Plaintiff out of his cell for law library. (Doc. 1 ¶ 19).

14

The Plaintiff spoke with Sergeant Wagner at the unit's bubble where he advised the Plaintiff that he called the Librarians, Defendant[]s Valisnky and Gomonda, and they told him that the Plaintiff never ve[r]ified anything with them and that the Plaintiff would not be allowed to attend his law library sessions due to cell restriction.  (Doc. 1 ¶ 21).

These facts are wholly insufficient for this court to infer that an agreement was made.  Twombly, 550 U.S. at 556 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  Washington's use of the word "conspired," in itself, is insufficient.  (Doc. 28 ¶ 16).  Accordingly, the court will dismiss Washington's Section 1983 conspiracy claim against Blommel, Valinsky, Gomonda, and Adamcik due to his failure to state a plausible claim for relief.  The court will grant Washington leave to amend his complaint to cure the pleading deficiency as to his conspiracy claim.

### 2.     First Amendment Access to Courts Claim

Washington alleges that he was denied access to the law library and that there was "time that could not be tolled toward the filing of his habeas corpus[.]" (Doc. 1 ¶¶ 14-28, 81).  He thus argues that he was deprived of his First Amendment right of access to the courts.  (Id.).

15

Defendants move to dismiss the First Amendment access to courts claim. (Doc. 25, at 13-14). They argue that Washington does not allege that he suffered an actual injury, such as the loss in a legal action or a missed deadline. Id. As such, they assert, he has failed to state a claim. Id. In his opposition brief, Washington argues that "actual injury may not be required" to sustain his claim. (Doc. 28 ¶ 14).

It is well-recognized that prisoners retain a right of access to the courts under the First and Fourteenth Amendments. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). Where a prisoner asserts that defendants' actions have inhibited his opportunity to present a past legal claim, he must allege facts sufficient to show that: (1) he "suffered an 'actual injury' in that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Id. at 205-06 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). The complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. (quoting Christopher, 536 U.S. at 416-17). The plaintiff must also demonstrate that the

denial of access actually caused the alleged injury to occur.  Tinsley v. Gloria,

369 F. App'x 378, 381 (3d Cir. 2010) (citing Lewis, 518 U.S. at 352-54).

Regarding a lost underlying legal claim, Washington has not alleged that he

lost the opportunity to formulate a response or that he lost the ability to pursue a

specific legal remedy because of a missed deadline.  Washington asserts that he

was pursuing his criminal case in state court at the time he was denied access to

the law library.  (Doc. 28 ¶ 14).  He admits that he did not miss any actual

deadlines.  (Id.).  Instead, Washington asserts that his court filing affected the

tolling of his federal habeas proceeding, which may "impede[ ] on the plaintiff's

potential future filings."  Id.  He argues that an "actual injury may not be required"

to sustain his claim.  (Id.).  Washington's argument is unavailing.  To state an

access to courts claim, the "actual injury" he must demonstrate is the "lost ...

chance to pursue a 'nonfrivolous' or 'arguable'" legal claim.  Monroe, 536 F.3d at

205.  Washington has not set forth such allegations.  The court notes that the

docket sheet in Commonwealth v. Washington, CP-51-CR-0008855-2008,

reveals that, during the relevant time frame, Washington filed his second PCRA

petition on August 24, 2023.  See Commonwealth v. Washington, No. CP-51-CR-

0008855-2008 (Pa. Ct. Com. Pl. Phil. Cnty.).  Washington continues to litigate his

PCRA petition, and the petition remains pending in state court.  See id.  Further,

17

Washington is represented by counsel in that criminal proceeding.  See id.  The fact that Washington is represented by counsel in that proceeding forecloses his access to courts claim as a matter of law.  See Pressley v. Johnson, 268 F. App'x 181, 183 (3d Cir. 2008) (alleged destruction of prisoner's legal materials did not deny access to courts where he was represented by counsel and received a jury trial on his civil rights claims).  The court finds that the complaint does not describe a lost underlying legal claim (see Doc. 1 ¶¶ 14-28, 81), and Washington has not been prevented from presenting his claims in his state court criminal case.

Additionally, Washington has failed to plead that there was no further remedy available to him, the second element of an access to courts claim.

In sum, Washington has not satisfied the pleading requirements for an access to courts claim.  Therefore, defendants' partial motion to dismiss will be granted as to the First Amendment access to courts claim.

### 3.    Eighth Amendment Claim related to choosing between Law Library Time and Yard Time

Washington challenges the need to choose between exercise time and law library time as a violation of the Eighth Amendment's ban on cruel and unusual punishment.  (Doc. 1 ¶ 28).

18

Conditions of confinement may violate the Eighth Amendment if they satisfy two criteria. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). First, the conditions alleged must be sufficiently serious such that the official's act or omission results in the denial of "the minimal civilized measure of life's necessities." <u>Id.</u> (citation omitted). Second, the officials responsible for these conditions must exhibit "deliberate indifference" to the inmate's health and safety. <u>Id.</u> They must act with a state of mind "more blameworthy than mere negligence." <u>Id.</u> at 835.

The first element of an Eighth Amendment deliberate indifference claim "is adequately pled when the allegations depict conditions where the inmate is denied 'the minimal civilized measure of life's necessities.'" <u>Clark v. Coupe</u>, 55 F.4th 167, 179 (3d Cir. 2022) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991)). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 834). This standard is less demanding than alleging conditions posing "'a probable risk of harm.'" <u>Id.</u> (quoting <u>Chavarriaga v. N.J. Dep't of Corrs.</u>, 806 F.3d 210, 227 (3d Cir. 2015)).

"'Conditions ... alone or in combination [ ] may deprive inmates of the minimal civilized measure of life's necessities.'" <u>Mammana v. Fed. Bureau of</u>

19

Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Some conditions of confinement may violate the constitution "'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."  Id. at 373-74 (quoting Wilson, 501 U.S. at 304).

Nonetheless, it remains well-established that prison conditions may be harsh and uncomfortable without violating the constitutional minimums.  Farmer, 511 U.S. at 833-34.  "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted."  McKune v. Lile, 536 U.S. 24, 40 (2002).  Thus, the prisoner-plaintiff bears the burden of proving that the challenged condition is "extreme" and "pose[s] an unreasonable risk of serious damage to [the prisoner's] future health' or safety."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation marks and citations omitted).

Review of Washington's Eighth Amendment claim begins and ends with the first element.

As to Washington's claim that he was required to choose between yard time or law library time due to his cell restriction, courts have found that although

20

the near-total deprivation of the opportunity to exercise may violate the Eighth Amendment, temporary denial of out-of-cell exercise does not violate the constitution.  Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (deprivation of out-of-cell exercise for twenty-eight days was not a deprivation). Courts should consider "the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation."  Id. (citations omitted).  Here, Washington does not allege that he suffered from physical or mental distress as a result of any restriction on exercise.  Washington admits that he was given out-of-cell recreation, though he alleges that his cell restriction required him to choose between yard and the law library.  This condition does not violate the Eighth Amendment.

As to any deprivation of access to the law library, a claim that prison officials have denied an inmate access to the law library does not constitute an Eighth Amendment claim, but rather a First or Fourteenth Amendment access to courts claim.  Frazier v. Daniels, 2010 WL 2040763, at *12 & n.12 (E.D. Pa. May 20, 2010) (citations omitted).  Moreover, any claim based on denial of access to a prison law library must be accompanied by "some actual injury."  Id.  As discussed supra, Washington has alleged no such injury.

21

The second, actual knowledge requirement of an Eighth Amendment claim means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  A prison official, however, cannot avoid liability by ignoring "obvious dangers to inmates." Id. at 842.  Rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id.  Stated differently, "[d]eliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed 'an excessive risk to inmate health and safety.'" Clark, 55 F.4th at 179 (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)).  Because the court finds that Washington has not plausibly alleged that the conditions to which he was exposed (choosing between yard time or law library time) posed a risk of serious harm, the court need not address the second element of the Eighth Amendment deliberate indifference claim.  Therefore, the motion to dismiss this claim will be granted.

B.     Fourteenth Amendment Due Process Claim against Warren, Hickok, and Wiederhold

Washington alleges that Correctional Officer Warren and Correctional Officer Hickok violated his due process rights by failing to properly serve him with the misconduct report in violation of DOC policy and "thereby denying him the

ability to call witnesses and present evidence in his defense at the misconduct hearing[.]" (Doc. 1 ¶¶ 29-48). He further alleges that Hearing Examiner Wiederhold violated his due process rights by failing "to state on the record the reasoning for denying his request to call witnesses or have video footage reviewed." (Id. ¶ 48). Defendants argue that the denial of due process claim should not proceed because "Washington alleges that he was afforded a misconduct hearing and had the ability to appeal the decision." (Doc. 25, at 18).

According to the complaint, Washington was issued misconduct number D497975 on November 8, 2023, as a result of the October 31, 2023 incident relating to Washington's visitor. (Doc. 1 ¶¶ 29, 35-36). Washington was charged with possession or use of a dangerous or controlled substance (attempt), criminal conspiracy, unauthorized use of the mail or telephone, and possession of contraband-drug paraphernalia. (Id. ¶ 39). Washington was purportedly found guilty of the possession of a controlled substance and conspiracy offenses, which resulted in a 150-day period of disciplinary confinement and ultimate transfer to a facility in the Western District of Pennsylvania. (Id. ¶ 41). Following appeals, the findings of guilt were upheld. (Id. ¶¶ 42, 46).

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall ... deprive any person of life, liberty, or

property, without due process of law." U.S. Cons. amend. XIV, § 1. A protected liberty interest may be created by either the Due Process Clause itself or by state law. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if it does, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the United States Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Wolff, 418 U.S. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) 24-hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

24

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Third Circuit and other courts applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead resulted in disciplinary or administrative segregation. See, e.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1992).

However, the Supreme Court's subsequent decision in Sandin v. Conner marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Sandin, 515 U.S. at 481. In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any particular regulation, the Supreme Court held that the procedural protections in

<u>Wolff</u> were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Id.</u>  The <u>Sandin</u> Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this circuit, applying <u>Sandin</u> in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement.  <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002) (because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); <u>Smith v. Mensinger</u>, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not implicate liberty interest); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 708 (3d Cir. 1997) (determining that placement in administrative custody without a due process hearing for 15 months was not atypical and significant hardship).

26

Based upon an application of the law set forth in <u>Sandin</u> and the subsequent line of decisions cited above, the 150-day disciplinary custody term imposed against Washington was not of such magnitude as to implicate a protected liberty interest.  <u>See</u> <u>Smith</u>, 293 F.3d at 654 (holding that placement in disciplinary confinement for seven months "does not, on its own, violate a protected liberty interest as defined in <u>Sandin</u>"); <u>Griffin</u>, 112 F.3d at 708 (determining that placement in administrative custody without a due process hearing for 15 months was not atypical and significant hardship).  However, Washington does allege that he was denied the due process protections provided under <u>Wolff</u> and <u>Hill</u>—he alleges that he was denied the opportunity to present witnesses and evidence on his behalf.  (Doc. 1 ¶¶ 29-48).  Accordingly, the court will deny defendants' motion to dismiss with respect to the denial of due process claim against defendants Warren, Hickok, and Wiederhold.

Washington also alleges that his due process rights were violated by what he believes was a false misconduct report issued against him.  (Doc. 28 ¶ 25).  "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  <u>Seville v. Martinez</u>, 130 F. App'x 549, 551 (3d Cir. 2005).  This is because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false

misconduct reports." <u>Thomas v. McCoy</u>, 467 F. App'x 94, 97 (3d Cir. 2012); <u>see also</u> <u>Smith</u>, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").  Thus, to state a plausible claim based on the filing of the report, Washington must allege that he was denied an "opportunity to confront and challenge the allegedly perjured testimony offered in support of the misconduct reports." <u>Smith</u>, 293 F.3d at 654.  Washington acknowledges that he was afforded a misconduct hearing and had the ability to appeal the decision.  (Doc. 1 ¶¶ 42, 46).  However, he essentially alleges that he did not receive an opportunity to be heard regarding the misconduct charges because he was denied the opportunity to call witnesses or present evidence on his behalf.  (<u>Id.</u> ¶¶ 46-48).  He has thus plausibly alleged a due process claim and this claim shall proceed.

C.     <u>First Amendment Retaliation Claim against Kraynak</u>

Washington asserts that defendant Kraynak retaliated against him for filing grievances.  (Doc. 1 ¶¶ 49-58).  Specifically, he alleges that defendant Kraynak denied his grievance because he was "ticking people off" by filing his prior grievances.  (<u>Id.</u> ¶ 58; Doc. 28 ¶ 30).  These allegations are insufficient to plead a plausible First Amendment retaliation claim against defendant Kraynak.

28

To plead a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's retaliation claim, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment.  See id. (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)); Smith, 293 F.3d at 653 (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223-25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's First Amendment retaliation claim, an adverse action is one that is "sufficient to deter a person of ordinary

29

firmness from exercising [their] [constitutional] rights[.]" <u>Mitchell</u>, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); <u>Fantone v. Latini</u>, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights ..." (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis.  <u>See</u> <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element, the court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." <u>Watson</u>, 834 F.3d at 422.  The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." <u>Id.</u> (footnote omitted).  A plaintiff's burden relating to this element is "very low at the pleading stage." <u>Edwards v. Houser</u>, 2024 WL 3362276, at *5 (M.D. Pa. July 9, 2024)

(citations omitted); <u>see also</u> <u>Mitchell</u>, 318 F.3d at 530 (explaining that "the word 'retaliation' in [the plaintiff's] complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him"); <u>Bendy v. Ocean County Jail</u>, 341 F. App'x 799, 802 (3d Cir. 2009) (unpublished) ("To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." (internal quotation marks and citation omitted)).

With respect to the first <u>Rauser</u> prong, Washington alleges that he engaged in constitutionally protected activity leading to the alleged retaliation—he alleges that defendant Kraynak retaliated against him for filing grievances. The filing of a grievance is an activity protected by the First Amendment. <u>See</u> <u>Watson</u>, 834 F.3d at 422.

Regarding the second element of a retaliation claim, Washington asserts that defendant Krayank's denial of his grievance was an adverse action. (Doc. 1 ¶ 58; Doc. 28 ¶ 30). Washington cannot allege that defendant Krayank's response to his grievance constituted unlawful retaliation because "[t]he denial of grievances is not an adverse action for retaliation purposes." <u>Owens v. Coleman</u>, 629 F. App'x 163, 167 (3d Cir. 2015) (citations and internal quotation marks omitted). Additionally, the retaliation claim fails to the extent that it is

based on verbal harassment, as the harassment alleged is not a sufficiently adverse action to support a retaliation claim.  Verbal harassment may be sufficiently adverse to support a retaliation claim if the plaintiff has been subjected to "an entire campaign of harassment which though trivial in detail may have been substantial in gross."  Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).  But isolated incidents of verbal retaliation are not sufficiently adverse actions to support a retaliation claim.  See, e.g., Naranjo v. Walter, 2023 WL 5928506, at *3 (3d Cir. Sept. 12, 2023) (non-precedential) (while the Third Circuit has not decided in a precedential opinion whether a threat alone can be a sufficiently adverse action to support a retaliation claim, the issue need not be addressed where the threat "closely resembles a warning" not to violate prison rules. In that event, a "vague threat ... is insufficient evidence from which a jury could conclude that [the plaintiff] suffered from an adverse action."); Chruby v. Kowalesky, 534 F. App'x 156, 161 (3d Cir. 2013) (finding that a verbal threat to write an inmate-plaintiff up for misconduct if he wrote another letter that the defendant deemed inappropriate was not sufficient to deter a reasonable inmate from exercising his constitutional rights); Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009) (noting that isolated verbal threats do not constitute retaliation).  The verbal harassment alleged in this case—a two-day period in

32

which Kraynak told Washington that he was "having troubles with his grievance process because of his previous grievances regarding cell restriction 'ticking people off'" (Doc. 1 ¶¶ 54, 56-58)—is not sufficient to support a retaliation claim.

Thus, Washington fails to plead facts supporting an adverse action sufficient to deter an ordinary person from exercising his First Amendment rights—a required element of a First Amendment retaliation claim. The court will grant defendants' motion to dismiss the First Amendment retaliation claim against Kraynak.

D.    Fifth Amendment Due Process Claim

Defendants' final argument is that Washington's Fifth Amendment due process claim fails as a matter of law because they are employees of the DOC or SCI-Frackville, and the Fifth Amendment does not apply to them. (Doc. 25, at 20-21). Defendants' argument succeeds. The Fifth Amendment is inapplicable here because Washington does not allege (and could not plausibly allege) that any defendant is a federal official, and the Fifth Amendment's Due Process Clause does not apply to state actors. See Nemeth v. Off. of Clerk of Superior Ct. of N.J., 837 F. App'x 924, 929 n.5 (3d Cir. 2020) ("[B]ecause all of the defendants named by [the plaintiff] were state and private officials and entities, the District Court properly concluded that [the plaintiff] cannot pursue a Fifth

Amendment claim against any defendant, as the Due Process Clause under the Fifth Amendment protects against federal governmental actions, not state actions."); see also Santos v. Sec'y of D.H.S., 532 F. App'x 29, 33 (3d Cir. 2013) (unpublished) ("[T]he Fifth Amendment applies to actions of the federal government, not state actions[.]" (citing Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.11 (3d Cir. 2005))).  Therefore, the court will grant defendants' motion to dismiss Washington's Section 1983 claim for violation of the Fifth Amendment Due Process Clause.

## IV.   Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002) (holding that in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment, a court should grant a plaintiff leave to amend a deficient complaint after a defendant moves to dismiss it).  "In assessing 'futility,' the district court applies the same standard of legal sufficiency as [it] applies under Rule 12(b)(6)."  In re Burlington Coat Factory, 114 F.3d at 1434.

34

Based on the court's discussion above, it would be futile to allow Washington to replead his First Amendment access to the courts claim, Eighth Amendment claim regarding a choice between exercise time and law library time, First Amendment retaliation claim, and Fifth Amendment process claim.  On the other hand, the court will allow Washington to file an amended complaint concerning his Section 1983 conspiracy claim against Blommel, Valinsky, Gomonda, and Adamcik, to the extent that he can allege any facts establishing a plausible claim for relief.

## V.    **Conclusion**

Consistent with the foregoing, defendants' motion (Doc. 20) to partially dismiss the complaint will be granted in part and denied in part.  The motion to dismiss the Fourteenth Amendment due process claim against Warren, Hickok, and Wiederhold will be denied.  The motion to dismiss the conspiracy claim, First Amendment access to the courts claim, Eighth Amendment claim regarding a choice between exercise time and law library time, the First Amendment retaliation claim, and Fifth Amendment claim will be granted.  The court will grant Washington leave to amend only as to his Section 1983 conspiracy claim against Blommel, Valinsky, Gomonda, and Adamcik.

An appropriate order shall issue.


Date: January 6, 2026

_____
JUDGE JULIA K. MUNLEY
United States District Court