IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YUSUF WASHINGTON, | : | No. 3:25cv533 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| C.O. BLOMMEL, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Yusef Washington ("Washington") commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, when he was housed at the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"). (Doc. 1). Named as defendants are Correctional Officer Blommel, Librarian Gomonda,[1] Librarian Valinsky, Unit Manager Adamcik, Correctional Officer Warren, Correctional Officer Hickok, Hearing Examiner Wiederhold, Lieutenant Kraynak, Lieutenant Miotto, Sergeant Rossochacy, Sergeant Troutman, and Unit Manger Wegrzynowicz.

---

[1] Washington spells this defendant's name as both "Gomonda" and "Gamonda." (See Doc. 1). In their filings, defendants spell the name as "Gomonda." (See Docs. 20, 25). The court will adopt defendants' spelling as correct.

Defendants moved to dismiss the complaint on June 11, 2025. (Docs. 20, 25). By memorandum and order dated January 6, 2026, the court dismissed all of Washington's claims except his Fourteenth Amendment due process claim. (Docs. 30, 31).

Presently before the court is defendants' motion for reconsideration of the January 6, 2026 order, wherein they request that the court dismiss the due process claim. (Docs. 33, 34). For the reasons that follow, the court will grant defendants' motion.

I.   **Factual Background**[2]

Washington alleges that he was denied due process in connection with inmate misconduct number D497975. (Doc. 1 ¶¶ 36, 48). The misconduct stems from the following incident.

On October 31, 2023, one of Washington's approved visitors attempted to visit him at SCI-Frackville but was prevented because a K-9 officer searched the visitor. (Id. ¶¶ 29-31). Though no contraband was found on the visitor, she was not permitted to visit with Washington. (Id. ¶ 31). The visitor declined a voluntary search of her vehicle when she found out that she would not be permitted to visit

---

[2] For purposes of this memorandum, the court only includes the facts relevant to Washington's due process claim.

2

Washington even if the results of the vehicle search were negative. (Id. ¶¶ 29-33). The visitor then left the facility. (Id. ¶ 34).

On November 8, 2023, Washington was escorted to the restricted housing unit ("RHU"). (Id. ¶ 35). Washington alleges that he was not advised as to why he was being placed in the RHU. (Id.). Later that day, Washington alleges that defendant Hickok delivered an incomplete copy of misconduct number D497975 to another inmate, although it was intended for Washington. (Id. ¶¶ 36-37). After learning that the misconduct was delivered to the wrong inmate, defendant Hickok served an incomplete copy of misconduct number D497975 on Washington. (Id. ¶ 38). Washington alleges that he was charged with violations related to attempting to bring controlled or dangerous substances into SCI-Frackville. (Id. ¶ 39). Washington alleges that, by failing to give him the inmate version and witness portions of the discipline forms, defendant Hickok denied Washington the ability to call witnesses and present evidence on his behalf at his misconduct hearing. (Id. ¶¶ 38, 40, 48). Following a hearing, Washington was found guilty of possession and conspiracy and was sanctioned with 150 days in disciplinary custody and ultimately transferred to a facility in the Western District of Pennsylvania. (Id. ¶ 41). Washington appealed the misconduct but was denied relief on appeal. (Id. ¶¶ 42-47).

Washington alleges that defendant Hearing Examiner Wiederhold failed to state on the record the reasoning for denying his request to call witnesses or request to review video footage. (Id. ¶ 48). He thus alleges that he was denied due process of law. (Id. ¶¶ 9, 48).

## II. Legal Standard

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or present newly discovered evidence." Hernandez v. United States, 608 F. App'x 105, 109 (3d Cir. 2015) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). Such a motion may be granted based on one of three grounds: (1) "an intervening change in controlling law;" (2) "the availability of new evidence;" or (3) "the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). As such, a party may not rely on evidence that has already been submitted to support a motion for reconsideration. Harsco, 779 F.2d at 909. A motion for reconsideration is not a vehicle to simply "reargue matters already argued and disposed of." Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310, 313 (M.D. Pa. 1994), aff'd, 31 F.3d 1175 (3d Cir. 1994) (citing Davis v. Lukhard, 106 F.R.D. 317, 318 (E.D. Va. 1984)). A party's mere dissatisfaction with a ruling "is not a

proper basis for reconsideration." Velazquez v. UPMC Bedford Mem'l Hosp., 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004) (quoting Burger King Corp. v. New England Hood and Duct Cleaning Co., Civ. No. 98-cv-3610, 2000 WL 133756, *2 (E.D. Pa. Feb. 4, 2000)).  Given the importance of finality in legal judgments, motions for reconsideration should be granted sparingly.  Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

III.   **Discussion**

Defendants urge the court to reconsider its prior ruling that the complaint sets forth a plausible Fourteenth Amendment due process claim.

As stated, Washington alleges that Correctional Officer Warren and Correctional Officer Hickok violated his due process rights by failing to properly serve him with the misconduct report in violation of DOC policy and "thereby denying him the ability to call witnesses and present evidence in his defense at the misconduct hearing[.]" (Doc. 1 ¶¶ 29-48).  He further alleges that Hearing Examiner Wiederhold violated his due process rights by failing "to state on the record the reasoning for denying his request to call witnesses or have video footage reviewed." (Id. ¶ 48).

According to the complaint, Washington was issued misconduct number D497975 on November 8, 2023, as a result of the October 31, 2023 incident

relating to Washington's visitor. (Id. ¶¶ 29, 35-36). Washington was charged with possession or use of a dangerous or controlled substance (attempt), criminal conspiracy, unauthorized use of the mail or telephone, and possession of contraband-drug paraphernalia. (Id. ¶ 39). Washington was purportedly found guilty of the possession of a controlled substance and conspiracy offenses, which resulted in a 150-day period of disciplinary confinement and ultimate transfer to a facility in the Western District of Pennsylvania. (Id. ¶ 41). Following appeals, the findings of guilt were upheld. (Id. ¶¶ 42, 46). Washington argues that his right to due process was violated because he was denied the right to present witnesses and evidence on his behalf. (Id. ¶¶ 46-47).

The United States Supreme Court has held that prison disciplinary proceedings are not part of a criminal prosecution, and as such, inmates are not entitled to the full panoply of due process rights due a criminal defendant. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To assert a right to procedural due process, a plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Here, Washington must show he had a "liberty interest in remaining free of disciplinary custody." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003). If he had no such interest, no process was owed to him. Id. This

kind of liberty interest is not shown unless a plaintiff establishes that his placement in restricted housing imposed an "'atypical and significant hardship'" on him "'in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  To determine if Washington's placement was atypical, the court considers "the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." Shoats, 213 F.3d at 144.  Thus, in determining whether a particular form of prison discipline presents an "atypical and significant" hardship, a court considers "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Asquith v. Dep't of Corr., 186 F.3d 407, 412 (3d Cir. 1999) (quoting Griffin v. Vaughn, 112 F.3d 703, 706 & n. 2 (3d Cir. 1997)).  As a result, the proper focus is on the nature of the deprivations itself. Sandin, 515 U.S. at 481-82.

Applying these legal benchmarks, courts within this circuit have held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not give rise to due process claims. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002) (because prisoners can reasonably

anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not implicate liberty interest); Griffin, 112 F.3d at 708 (determining that placement in administrative custody without a due process hearing for 15 months was not atypical and significant hardship).

Because Washington's disciplinary confinement of 150 days did not constitute an atypical and significant hardship, his liberty interests were not implicated and his right to the procedures set forth in Wolff was not triggered. See Dunbar v. Barone, 487 F. App'x 721, 724 (finding no due process violation when the inmate spent 540 days in disciplinary custody, despite not being able to call witnesses for his misconduct hearing). Therefore, the court must grant defendants' motion for reconsideration as the allegations of the complaint do not establish a procedural due process claim.[3]

## V. Conclusion

Consistent with the foregoing, the court will grant defendants' motion (Doc. 33) for reconsideration, vacate the portion of its January 6, 2026 memorandum

---

[3] The court will dismiss Washington's due process claim without leave to amend, as amendment would be futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002) (a complaint that sets forth facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend).

and order (Docs. 30, 31) that denied defendants' motion to dismiss the Fourteenth Amendment due process claim, and grant dismissal as to that claim.

An appropriate order shall issue.

Date: February 19, 2026

JUDGE JULIA K. MUNLEY
United States District Court